## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Wendy Vehar, | ) | CASE NO.   5:05 CV 1367 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | |
| Cole Vision Corporation, et al., | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

This matter is before the Court upon Defendants' Cole National Vision Corporation, Luxottica Groups S.P.A., Les Snyder, and Steve Hurd's Motion for Summary Judgment. (Dkt. # 34).  For the following reasons Defendants' Motion for Summary Judgment (Dkt. #34) is **GRANTED**.

## I.  BACKGROUND

### A. Vehar's Employment at Cole

Plaintiff, Wendy Vehar ("Vehar"), asserts this gender discrimination action against her employer, Defendant, Cole National Vision Corporation ("Cole").  Vehar was hired at Cole's Twinsburg office in January 2001 as a Data Analyst in the Merchandise Planning and Allocation ("Merchandise Planning") department headed by Lyle Turner ("Turner").

1

(Dkt. #50, App. C, Vehar's Personnel File at 39).[1]  When Vehar was hired, she signed Cole's "Employee Handbook Acknowledgment," stating that she was aware of Cole's sexual harassment polices and understood her obligations under the policies.  (Hurd Affidavit ¶4).  Specifically, Cole's Non-Harassment Policy (the "Policy") allows employees to complain of harassment to someone other than their supervisor, including the manager of human resources or any other manager they feel comfortable speaking with about the situation.  (Hurd Deposition at Exhibit 12).  The Policy also prohibits retaliation against an employee who complains or participates in the investigation of a complaint.  (Hurd Deposition at Exhibit 12).  Steve Hurd ("Hurd"), who worked in Cole's human resources department during Vehar's employment, characterized Cole's harassment policy as "zero tolerance."  (Hurd Deposition at 67).

Vehar's starting salary at Cole was in pay grade 28, at $46,000 per year, and her duties included data entry and data analysis.  (Vehar Deposition at 35).  Vehar's first yearly performance review indicated that Turner was concerned about Vehar's lack of organization, failure to communicate with her supervisor, and ability to complete projects in a timely manner.  (Vehar Deposition at 41-43, Exhibits 6-8).  Notwithstanding Turner's concerns, Vehar received a 1% raise, increasing her salary to $46,460.  (Vehar Deposition at Exhibit # 10).

In June 2002, Vehar was transferred to the Retail Systems division of the

---

[1] Prior to working at Cole, Vehar was employed as a computer programmer between 1986 and 1992. Vehar was not employed from 1992 until 2001, allowing her to stay home and raise her children. (Vehar Deposition at 19).

2

Information Technology ("IT") group.  Vehar's job title changed from Data Analyst to "Programmer II," but her salary remained in pay grade 28, at $46,460.  (Snyder Deposition at 11-12, 15).  The IT group was responsible for maintaining computer technology in a number of retail stores.  The IT group was headed by Les Snyder ("Snyder"), who acted as Vehar's supervisor during the remainder of her employment at Cole.  The IT group also included David Crosley ("Crosley"), Erich Leipold ("Leipold"), and Matt Gaudio ("Gaudio").  (Complaint ¶10 at 3).  Vehar's claims target these three members of the IT group.

### 1. Crosley

Before joining Cole, Crosley worked for eight years as a computer programmer at various companies.  Crosley was initially hired by Cole as an independent contractor in 1997, before transitioning to a full-time position in 2000.  When Vehar joined the IT group in 2002, Crosley was a Systems Analyst, which placed him in a supervisory role within the group led by Snyder.  (Dkt. # 36-8 at 000506).  Crosley's Systems Analyst position was a pay grade 31 position, earning $68,500 per year.  (Leipold's Personnel File at 60); (Vehar Affidavit at Ex. 17).

### 2. Leipold

Leipold worked as a computer programmer for nine years before coming to Cole.  Leipold was initially hired by Cole in 2000 as a Programmer Analyst in the IT group.  In 2001, Leipold was promoted to Senior Programmer Analyst, where he was under the immediate supervision of Crosley.  (Dkt. #36-8 at 000506).  Similar to Crosley, Leipold

3

was in a pay grade 31 position, making $67,307.  (Leipold's Personnel File at 60); (Vehar Affidavit at Ex. 17).  Leipold performed computer programming duties while employed at Cole, and received an expert rating in a number of computer programming languages.

### 3. Gaudio

Gaudio was hired into the IT group at Cole in early 2003 as a Project Manager.[2] Gaudio worked at Cole for one year as a Project Manager, designing and implementing projects to solve problems identified by retail stores and corporate offices.  Guadio managed at least one of the projects on which both Vehar and Leipold worked before leaving Cole in 2004.  (Gaudio Deposition at 7).

### B.  Vehar's Discrimination Claims

In October 2003, Vehar complained to Snyder that she was underpaid in comparison to her male co-workers and deserved a raise.  (Snyder Deposition at 30).  Snyder spoke to his supervisor, John Broerman ("Broerman"), about Vehar's complaint, at which point he discovered that Vehar had already discussed the matter with Broerman.  (Snyder Deposition at 30).  After investigating Vehar's complaint, Broerman reported back to Snyder that Cole decided not to adjust Vehar's salary because she had recently been promoted to Programmer Analyst three months earlier, placing her in a grade 29 position with a salary of $48,783.  (Vehar's Personnel File at 16-7); (Vehar Deposition at 74); (Snyder Deposition at 25).  Meanwhile, Vehar continued to work in the IT group, and in 2004 she received an

---

[2] There is little information regarding Gaudio's employment history at Cole because the record does not contain Gaudio's personnel file.

4

excellent performance rating with a 6% merit increase, bringing her salary to $51,709. (Vehar Deposition at 80).

In July 2004, Cole was acquired by Defendant, Luxottica U.S. Holdings Corporation ("Luxottica").  (Fleming Affidavit ¶2).  Upon receiving word of the purchase, several employees, including Crosley and Gaudio, left Cole to pursue other opportunities.  (Gaudio Deposition at 9); (Crosley's Personnel File at 101, 108).  Vehar, however, continued to work at Cole.

On November 8, 2004, Vehar sent a letter to Hurd, Snyder, and Broerman alleging that members of the IT group retaliated against her after she voiced complaints about her salary to Snyder and Broerman in October 2003.  Vehar's letter reiterated her allegations about being paid less than her male co-workers and stated that Vehar felt "ostracized" from the IT group because she was not invited to social outings and other members of the IT group did not communicate freely with her.  (Vehar Deposition at 91).  In addition, Vehar alleged that she was denied training in various computer programming languages and forced to carry a support pager on weekends in order that she could be contacted if a computer problem arose.  (Vehar Deposition at 88-90).  Hurd forwarded Vehar's letter to the Human Resources Manager for Luxottica, Sheryl Fleming ("Fleming"), who investigated the allegations on November 12, 2004. (Fleming Affidavit ¶1, 10 at 1-2); (Dkt. # 36); (Hurd Deposition at 16).  Fleming determined that Vehar was not provided any training in recent months because Luxottica was uncertain about its future in the IT department following the merger with Cole.  Fleming took no further action regarding

5

Vehar's complaints.  (Fleming Affidavit at ¶10-11at 2).

Ultimately, Luxottica closed the entire Cole's Twinsburg facility in October 2004, and offered Cole employees the option of applying for positions at its Cincinnati offices. (Fleming Affidavit ¶ 3 at 1).  Although Vehar expressed an interest in obtaining a job at the Luxottica headquarters, the only position comparable to Vehar's position at Cole paid $3,300 less than Vehar's current salary.  (Fleming Affidavit ¶ 7).  As a result, Luxottica notified Vehar that she was not selected for a position in Cincinnati, and her last day of employment at Cole was January 11, 2005.  (Vehar's Personnel File at 1); (Fleming Affidavit ¶ 9 at 2).  In the end, 543 Cole employees lost their jobs when the Twinsburg facility closed.  (Fleming Affidavit ¶ 9 at 2).

## II.  PROCEDURAL HISTORY

Vehar initially filed her complaint in the Summit County Court of Common Pleas of Ohio.  Defendants then removed the action to this Court pursuant to 28 U.S.C. § 1331 on May 16, 2005.  (Dkt. #1).  While Vehar's complaint contains multiple claims, several of the claims were voluntarily withdrawn and omitted from Vehar's Opposition to Defendants' Motion for Summary Judgment (Dkt # 50).[3]  The Court's construction of the Complaint and Vehar's opposition to Defendants' motion reveals four cognizable classes of claims: (1) disparate pay violations of the Equal Pay Act of 1963, 29 U.S.C. § 206(d) *et*

---

[3] In Vehar's Opposition to Defendants' Motion for Summary Judgment, she voluntarily dismisses her claim of age discrimination under R.C. 4112 and her claims of wrongful discipline and discharge in violation of public policy in Ohio.

6

*seq.* ("EPA") and the Ohio Equal Pay Act, R.C. § 4111.17 ("Ohio EPA") (Compl. ¶¶ 51, 55);

(2) sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e *et seq.* ("Title VII") and the Ohio Civil Rights Act ("OCRA"), R.C. § 4112.02

(Compl. ¶ 47); (3) hostile work environment in violation of Title VII and R.C. § 4112.02;

and (4) retaliation for complaining about alleged discriminatory practices, in violation of

the EPA and R.C. § 4112 (Compl. ¶¶ 45, 52).

Defendants filed this Motion for Summary Judgment on May 3, 2006, alleging that

there is no genuine issue of material fact with respect to Vehar's claims. The Court shall

address each class of claims in turn.

## III. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ P. 56(c). The court must "view the evidence and draw all

reasonable inferences therefrom in the light most favorable to the non-moving party." Little

v. BP Exploration & Oil Co., 265 F.3d 357, 361 (6th Cir. 2001). "Credibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from

the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to

be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); accord Graham-Humphreys v. Memphis

Brooks Museum of Art, Inc., 209 F.3d 552, 556-57 n.7 (6th Cir. 2000). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. "A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56 (c)). For a dispute to be genuine, the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

### B. Equal Pay Act Claims

Vehar asserts gender-based wage discrimination under the EPA and the state analog, the Ohio EPA. Claims brought pursuant to the Ohio EPA are subject to the same standards as are applied under the EPA. Creech v. Ohio Cas. Ins. Co., 944 F.Supp. 1347, 1353 (S.D. Ohio 1996). Thus, the Court addresses the claims in tandem.

The EPA prohibits employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work. See 29 U.S.C. § 206(d)(1). To establish a *prima facie* case of wage discrimination under the EPA, the plaintiff must demonstrate that an employer pays different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are

8

performed under similar working conditions." <u>Corning Glass Works v. Brennan</u>, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)).[4]  "Equal work" does not require that the jobs be identical, only that there exist "substantial equality of skill, effort, responsibility and working conditions." <u>Odomes v. Nucare, Inc.</u>, 653 F.2d 246, 250 (6th Cir. 1981).  Whether the work of two employees is substantially equal "must be resolved by an overall comparison of the work, not its individual segments." <u>Beck-Wilson v. Principi</u>, 441 F.3d 353, 362 (6th Cir. 2006).  Thus, the focus is solely on the "the skills and qualifications actually needed to perform the jobs considered," and not on education and experience.  <u>Id.</u>, at 363.

### 1. *Prima Facie* Case

Vehar alleges that she was paid less than her male colleagues, Gaudio, Crosley and Leipold, even though she performed substantially equal work.

### a. <u>Gaudio</u>

Although Vehar alleges that Gaudio was paid more than her for equal work, she provides no evidence of Gaudio's salary or job functions to support her claim.  Defendants, however, demonstrate that Cole brought Gaudio into the IT group as a Project Manager to provide leadership and supervision on various IT projects. (Gaudio Deposition at 6).  Vehar worked under Gaudio's management on several projects, performing computer

---

[4]  Unlike the showing required under a Title VII disparate treatment claim, the plaintiff in an EPA claim does not have to demonstrate proof of discriminatory intent.  <u>See</u> <u>Beck-Wilson</u> 441 F.3d at 360.

programming duties.  While Gaudio was responsible for implementing and designing the projects, Vehar's position only required task-based computer programming responsibilities. (Gaudio Deposition at 7).  Therefore, Vehar has not established a *prima facie* case under the EPA because there is no evidence that Cole paid different wages to Gaudio for equal work.

### b.  Crosley and Leipold

Vehar further asserts that Cole paid her less than Crosley and Leipold for equal work.  When Vehar transferred into the IT group in 2002, her job title changed from Data Analyst to "Programmer II."  However, Programmer II was still in pay grade 28, and her salary remained at $46,460.  (Snyder Deposition at 11-12, 15).  In contrast, Crosley and Leipold were both in pay grade 31 positions, making their salaries $68,500 and $67,307, respectively.  (Leipold's Personnel File at 60); (Vehar Affidavit at Ex. 17).  Vehar, Crosley and Leipold performed equal work because they were all hired as computer programmers in the IT group and worked together on a number of projects.  Their work included developing new computer programs, maintaining existing programs, and providing IT support to various retail stores.  (Vehar Deposition at 40-56); (Snyder Affidavit). Therefore, the Court finds that Vehar has established a *prima facie* case under the EPA because Cole paid different wages to Crosley and Leipold for equal work.  See Corning Glass Works v. Brennan, 417 U.S. at 195.

10

## 2. Affirmative Defense

Cole contends that notwithstanding Vehar's establishment of a *prima facie* case of wage discrimination, the wage differential between Vehar and her male co-workers is justified because Vehar possessed less skill and experience.  It is well-settled that once the plaintiff establishes a *prima facie* case under the EPA, the burden shifts to the defendant to prove that the wage differential is justified under one of the affirmative defenses outlined in the statute.  Kovacevich v. Kent State Univ., 224 F.3d 806, 826 (6th  Cir. 2000).  The statutory affirmative defenses are: a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or any factor other than sex.  See Corning Glass Works, 417 U.S. at 196;  Buntin v. Breathitt County Bd. Of Educ., 134 F.3d 796, 799 (6th Cir. 1998).  In order to be entitled to summary judgment, the defendant must prove that there is no genuine issue of material fact as to whether pay is due to a factor other than sex.[5]  EEOC v. Romeo Cmty. Sch., 976 F.2d 985 (6th Cir. 1992).  The employer must prove that "sex provides *no part* of the basis for the wage differential" in order to prevail on summary judgment.  Timmer v. Mich. Dep't of Commerce, 104 F.3d 833, 844 (6th Cir. 1997).

---

[5] This is in contrast to the Title VII framework where the plaintiff always bears the burden of proof of discriminatory intent.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993).  Under the Title VII framework defendants bear only a burden of production as to the affirmative defenses, at which point the burden shifts back to plaintiff to produce evidence sufficient to support an inference of pretext.  See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); Corning Glass Works, 417 U.S. 188, 197; and Equal Employment Opportunity Comm'n v. Romeo Community Schs., 976 F.2d 985, 988 (6th Cir. 1992).

Defendants rely on the fourth affirmative defense, "any factor other than sex," to support their contention that the pay differential between Vehar and her male co-workers exists as a result of Crosley and Leipold's additional years of work experience and Crosley's supervisory responsibilities. (Dkt. #34 at 8-10). The EPA's catch-all provision "does not include literally *any* other factor, but a factor that, at a minimum, was adopted for a legitimate business reason." EEOC v. J.C. Penney Co., Inc.*, 843 F.2d 249, 253 (6th Cir.1988). Education, experience, prior salary history, and different job and skill levels have all been held as acceptable reasons for a pay differential under the EPA. Balmer v. HCA, 423 F.3d 606, 612. (6th Cir., 2005); see also Irby v. Bittick, 44 F.3d 949, 956 (11th Cir. 1988) (stating that "experience is an acceptable factor other than sex if not used as a pretext for differentiation because of gender"). For example, in Balmer, the court held that a male co-worker's greater relevant industry experience, when compared to a female employee, was a factor other than sex that warranted a pay differential under the EPA. Balmer, 423 F. 2d at 61. Therefore, where Defendants' arguments about alleged differences in experience and education were irrelevant to the determination of "equal work" in Vehar's *prima facie* case, the Court now considers those arguments in the context of the affirmative defenses.

### a.  Crosley

Vehar asserts that Cole has not established that the difference between her salary and Crosley's was based on a factor other than sex. Specifically, Vehar contends that Crosley's

12

supervisory duties are not a factor other than sex because Crosley ceased to perform supervisory functions in 2003. Vehar also points out that she obtained a degree from a four-year institution and had six years of programming experience prior to joining the IT group at Cole, while Crosley only had an associate degree in computer programming.

Vehar correctly points out that Crosley's supervisory duties changed in 2003. Although Crosley's 2002 evaluation lists Crosley as a supervisor to Leipold and Vehar, his 2003 evaluation contains no comments about his supervisory responsibilities. (Crosley's Personnel File at 7277). However, despite these changes in his supervisory duties, Crosley remained in the Systems Analyst position during his employment at Cole and continued to be a team leader on smaller projects and provide technical instruction to other employees. (Snyder Affidavit ¶ 4); (Crosley's Personnel File at 72-7); (Vehar's Personnel File at 18-23). Furthermore, a closer inspection of the record reveals that Crosley's Systems Analyst job requires a bachelor's degree, *or* experience typically achieved with ten or more years of work. (Dkt. #36-8 at 000513). Crosley worked as a computer programmer and analyst for various companies for eight years before coming to Cole. In June 1997, Crosley was hired by Cole as an independent contractor. He then was hired as a full-time Systems Analyst by Cole in June 2000. Crosley, with thirteen years of experience, meets the listed requirements of the Systems Analyst position. In contrast, Vehar's six years of computer programming experience occurred between 1986 and 1992, almost nine years before she accepted a position at Cole. Consequently, Crosley's seven additional years of experience,

13

along with the leadership role he originally accepted, fit within the enumerated factors that qualify as "other than sex," justifying a pay differential. See Balmer, 423 F.2d at 612. As a result, Defendants have demonstrated that the difference in salary between Vehar and Crosley is based upon a factor other than sex.

### b. **Leipold**

Defendants assert the wage disparity between Vehar and Leipold is a result of Leipold's experience and individual skill levels. Prior to joining Cole, Leipold worked as a computer programmer for nine years. Leipold was hired by Cole as a Programmer Analyst in May 2000 and promoted to Senior Programmer Analyst in September 2001. Similar to Leipold, Vehar was hired into the IT group as computer programmer. However, when Vehar joined the IT group in 2002, Leipold had already been at Cole for two years. This gave Leipold eleven years total programming experience, as compared to Vehar's six years experience between 1986 and 1992. Leipold was also certified in several computer programming languages with which Vehar had no experience. In addition, Leipold's evaluations demonstrate that his supervisors were consistently impressed with his skill set, referring to Leipold as the "go-to-guy" who displays a "constant eagerness to learn from others while sharing his knowledge." (Leipold Personnel File, 73). In Leipold's 2003 evaluation he was called the "last line of defense" and praised for keeping abreast of new technology. (Leipold Personnel File, 69). His performance summary for 2003 also stated that, "Erich's quest for knowledge on new technologies and his ability to understand them

14

is impressive.  When someone starts talking about a new way to do something it is a good bet that Erich already owns a book on the subject and has tried it." (Leipold Personnel File, 70).

It follows that Leipold's higher pay grade is attributable to his years of experience both before and after joining Cole, as well as his expertise and skill.  Therefore, Defendants have demonstrated that the difference in the salaries of Leipold and Vehar is  based upon a factor other than sex.

### 3. Pretext

After finding that Defendants demonstrated an affirmative defense, "the Plaintiff bears the burden of producing evidence creating a triable issue of fact that the reasons proffered by Defendants are pretextual."  See Balmer v. HCA, 423 F.3d 606 (6th Cir. 2005).  Defendants have shown that Vehar was paid less than Crosley and Leipold because she had less experience computer programming and her experience occurred almost ten years before she was hired at Cole.  Vehar proffers no evidence to demonstrate that the reasons proffered by Defendants are pretextual.  Vehar relies only on allegations that she and her co-workers in the IT group performed equal work, without taking into account the difference in computer programming experience.  Accordingly, no reasonable jury could conclude that the difference between Vehar and her co-worker's salaries was due to sex, and Vehar's claims of wage discrimination under the EPA and the Ohio EPA fail as a matter of law.

15

### C. Sex Discrimination

Vehar alleges that Defendants discriminated against her based upon her sex, by terminating her employment at Cole and paying her less than male co-workers.  Title VII makes it unlawful employment practice to "fail or refuse to hire or to discharge an individual" because of that person's sex.  2. U.S.C. § 623(a)(1).[6]  A plaintiff may assert a Title VII violation by pursuing two separate and distinct theories of discrimination: (1) disparate treatment; or (2) disparate impact.  See generally Watson v. Fort Worth Bank and Trust, 487 U.S. 977 (1988).  Vehar alleges only a disparate treatment violation.

A disparate treatment violation occurs when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII.  See International Bhd. of Teamsters v. United States, 431 U.S. 324, 335-36 n.15 (1977).  A plaintiff seeking to demonstrate disparate treatment bears the burden of establishing discrimination with direct evidence showing intentional discrimination or with circumstantial evidence that creates an inference of discriminatory treatment.  See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111,121 (1985); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

_____

[6] Although Vehar alleges Title VII sex discrimination in her complaint, she only cites R.C. § 4112.02(A) in her Opposition to Defendants' Motion for Summary Judgment.  R.C. 4112.02(A) makes it an unlawful discriminatory practice "for any employer, because of the... sex... of any person, ... to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."  R.C. 4112 is the state law corollary of Title VII, making federal case law interpreting Title VII generally applicable to cases alleging violations of R.C. 4112.  Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm., 66 Ohio St.2d 192, 196 (1981).  As a result, Vehar's Title VII and state law claims under R.C. 4112 will be addressed together.

### 1.  Direct evidence

Vehar contends that she can demonstrate discriminatory animus through both direct and indirect evidence of discrimination.  "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor" in the adverse employment decision at issue.  Price Waterhouse v. Hopkins, 490 U.S. 228, 247 (1989); Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir.1999).  Evidence is direct if it would prove the existence of a fact without any inferences or presumptions.  Shorter v. Memphis Light, Gas & Water Co., 252 F.Supp.2d 611, 626 (W.D.Tenn., 2003).  However, isolated and ambiguous comments are insufficient to support a finding of direct discrimination.  See White v. Columbus Metropolitan Housing Authority, 429 F.3d 232 (6th Cir. 2005).

Vehar alleges that four e-mails from Snyder are direct evidence of discrimination. First, Vehar cites an e-mail from Snyder to other Cole employees in the IT group, congratulating Vehar on her recent promotion to the IT group and referring to her at-home motherhood as  a "a several year 'vacation' to raise 4 children."  Next, Vehar identifies an e-mail from Snyder inviting the members of the IT group and their spouses to a piano bar, "Howl at the Moon," which is geared at adult audiences and known for featuring songs with explicit language.  Finally, Vehar identifies two e-mails, allegedly forwarded to her by Snyder, containing jokes that refer to women as "evil" and "witches."

17

Synder's comment about motherhood and invitation to Howl at the Moon are ambiguous and cannot "reasonably be interpreted as an indication of an intent to discriminate on the basis of sex." See Shorter, 252 F.Supp.2d at 626-627 (holding that an employer's comment that the "Civil War wasn't over" to an African-American employee, while potentially indicative of discriminatory animus generally, was not direct evidence of discrimination absent evidence that it was a motivating factor for an adverse employment decision); see also Phelps v. Yale Security, 986 F.2d 1020, 1025 (6th Cir. 1993) (holding that a supervisor telling an employee that she could not change her co-worker's views because "he's a man, he's a man, and he's a man," did not require the conclusion that employee's sex was a motivating factor in her negative reviews). Snyder used the term "vacation" to refer to Vehar's at-home motherhood when describing Vehar's employment history in an e-mail that was congratulatory and welcomed Vehar into the IT group. Given the context of Snyder's e-mail, the trier of fact would have to make inferences or presumptions to determine whether the e-mail was discriminatory in nature. See Shorter, 252 F. Supp.2d at 627.

Similarly, Snyder's invitation to "Howl at the Moon" is ambiguous and does not indicate that Snyder was biased towards men or part of a "boys' club," as Vehar alleges. Howl at the Moon is a bar geared at adult audiences and known for featuring songs with explicit language. In her deposition, Vehar includes a copy of Snyder's e-mail along with articles describing Howl at the Moon that use explicit language and terms that are

18

derogatory to women.  (Vehar Deposition at Ex. A).  However, these articles were not part of Snyder's e-mail, and there is nothing in Snyder's e-mail that contains explicit language or makes references to women.  Rather, this e-mail appears to do nothing more than invite all members of the IT group to a benign social outing.  Therefore, Snyder's Howl at the Moon e-mail and comment about motherhood do not support a finding of direct evidence of discrimination.

Although the two e-mails containing jokes that refer to women as "evil" and "witches" are not innocuous or ambiguous, they fail to constitute direct proof of sex discrimination because "the critical inquiry [in a sex discrimination case] is whether gender was a factor in the employment decision *at the moment it was made.*" Price Waterhouse v. Hopkins, 490 U.S. 228, 241 (1989).  For example, in Phelps, the court rejected plaintiff's discrimination claim because the alleged discriminatory comments were made a year before plaintiff was fired and there was no evidence that the discriminatory comment was related to plaintiff's termination.  Phelps, 86 F.2d 1020 at 1026.

Vehar cannot establish any link between these e-mails and the decision not to hire her at the Luxottica or the failure to give her an additional raise.  One e-mail was allegedly sent on August 10, 2001, nearly four years before Vehar's termination.  The second alleged e-mail is a sheet of paper with no indication of the date it was sent or that Snyder was the sender.  Neither e-mail makes any reference to Vehar personally and there is no indication that the e-mails were related to Vehar's salary or her termination from Cole in January

19

2005.  As such, the e-mails are not direct evidence of sex discrimination against Vehar. Because the three e-mails and Snyder's comment do not "require the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions," see Jacklyn, 176 F.3d at 926, the evidence does not suffice to establish a claim of sex discrimination using direct evidence.

## 2.  Circumstantial Evidence

In order to survive summary judgment on a claim of sex discrimination using circumstantial evidence, the plaintiff must produce evidence sufficient to meet her *prima facie* burden under the four-prong test initially developed in McDonnell Douglas.[7]  Under the McDonnell Douglas framework, a plaintiff must establish a prima facie case of discrimination or retaliation by showing that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) despite her qualifications and employment, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated non-protected employee.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir.1992).  The defendant can then rebut the presumption of discrimination by articulating a legitimate non-discriminatory reason for failing to hire or promote the plaintiff.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-55 (1981).  If the defendant

---

[7] The McDonnell Douglas evidentiary formula applies to claim of discrimination under Ohio state law as well.  Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992).

produces a legitimate non-discriminatory reason, the plaintiff then must prove that the articulated reason is false or pretextual.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-508 (1993).

### a.  Wage Discrimination Claim

Defendants do not dispute that Vehar is a member of a protected class, qualified for her job, and has identified an adverse employment action in the form of a difference between her salary and two of her male co-workers.  However, Defendants argue that Vehar cannot establish a *prima facie* case because Vehar is not "similarly-situated" with respect to her male co-workers in the IT group.  Defendants' are correct that in a typical disparate treatment case, the fourth element of the McDonnell Douglas test is satisfied if the plaintiff can demonstrate that a similarly-situated person outside the protected class received more favorable treatment.  Birch v. Cuyahoga County Probate Court, 392 F.3d 151, 166 (6th Cir. 2004).  However, the Supreme Court and the Sixth Circuit have held that the McDonnel Douglas framework used to analyze Title VII discrimination claims may change in the context of sex-based wage discrimination claims.  See Gunther, 452 U.S. at 178-179; Birch, 392 F. 3d at 166.

Before analyzing which standard applies to Vehar's claim of sex-based wage discrimination under R.C. 4112.02 and Title VII, it is necessary to differentiate between a sex-based wage discrimination claim brought under Title VII and a sex-based wage discrimination brought under the EPA.   A plaintiff bringing a claim under the EPA must

21

meet the "equal work" standard in order to succeed.  <u>Corning Glass Works v. Brennan</u>, 417

U.S. 188, 195 (1974).  Title VII does not contain an explicit "equal work" standard.  <u>See</u>

<u>County of Washington v. Gunther</u>, 452 U.S. 161 (1981); <u>Birch v. Cuyahoga County Probate</u>

<u>Court</u>, 392 F.3d 151, 163 (6th Cir. 2006).  However, Title VII contains an employer safe

harbor provision, the so-called "Bennet Amendment," for sex-based wage discrimination

that does not violate the EPA.  The effect of the Bennet Amendment on Title VII sex-based

wage discrimination cases was addressed by the Supreme Court in <u>Gunther.</u>

  In <u>Gunther,</u> the employer argued that "the purpose of the Bennett Amendment was

to restrict Title VII sex-based waged discrimination claims to those that could be brought

under the Equal Pay Act, and thus claims not arising from 'equal work' are precluded."

<u>Gunther</u>, 452 U.S. at 168.  The Court rejected the employer's interpretation of the Bennet

Amendment, because such an interpretation would preclude a woman from succeeding on

a gender-based wage discrimination case unless her employer also employed a man at a

higher rate of pay.  Thus, the <u>Gunther</u> court held that a Title VII plaintiff suing under Title

VII for wage discrimination is not required, as part of her *prima facie* case, to demonstrate

that a person of the opposite sex is performing equal work if there is other highly probative

evidence that her salary would have been higher but for her sex.[8]  <u>Birch</u>, 392 F.3d at 163

---

[8] R.C.4112.02, under which Vehar asserts her claim, contains no corollary to the Bennett Amendment.  The omission of any reference to the Ohio Equal Pay Act in the R.C. 4112.02 lends even stronger support to the conclusion that it is not necessary for Vehar to meet the "equal work" standard in her sex-based wage discrimination claim.  <u>See</u> <u>Birch</u>, 392 F. 3d at 162 (rejecting the argument that a plaintiff must demonstrate "equal work" in a wage discrimination claim under R.C. 4112.02).

(citing <u>Gunther</u>).  This interpretation of sex-based wage discrimination claims under Title VII was recently followed by the Sixth Circuit in <u>Birch</u>, where the court held that the plaintiff's "failure to satisfy the 'equal work' standard is not necessarily fatal to her sex-based wage discrimination claims." <u>Birch</u>, 392 F.3d at 163.[9]

In <u>Birch</u>, the court also held that the <u>McDonnell Douglas</u> framework used to analyze Title VII discrimination claims may change in the context of sex-based wage discrimination claims.  <u>See</u> <u>Gunther</u>, 452 U.S. at 178-179; <u>Birch,</u> at 392 F.3d at 166.  The <u>Birch</u> court pointed out that there may be viable cases of sex-based wage discrimination even where the plaintiff cannot point to a similarly-situated employee of the opposite sex who is earning more.  <u>Birch</u>, 392 U.S. at 166.  For example, if there is strong evidence of discriminatory animus, a plaintiff's failure to meet the fourth prong of the <u>McDonnell Douglas</u> framework will not be fatal to her *prima facie* case.  The rationale for dispensing with the requirement of identifying a "similarly-situated employee" echoed the court's rationale for rejecting the "equal work" standard in a Title VII gender-based wage discrimination case– specifically, the court did not want to preclude a woman who is discriminatorily underpaid from bringing a claim against her employer unless the employer also employs a man in an equal job with higher pay.  <u>Id.</u> at162.  Furthermore, the <u>Birch</u> court reasoned that the purpose of

---

[9] The dissent in <u>Birch</u> argued that the majority's reading of <u>Gunther</u> was too expansive because it completely disregarded the "equal work" standard of the EPA in Title VII sex-based wage discrimination cases.  The dissent read <u>Guther</u> as only carving out an exception to the "equal work" requirement in isolated situations, such as instances where the employer has expressly told an employee that the employee would be paid more for but for their sex.

the *prima facie* burden is to "eliminate the most common nondiscriminatory reasons" and raise an inference that the adverse employment action was motivated by discriminatory animus. Id (citing Burdine, 405 U.S. at 253-254).

The evidence proffered by Vehar fails to meet her *prima facie* burden of sex-based wage discrimination under the McDonnel Douglas framework and the exception identified in Birch.[10] First, Vehar has attempted to satisfy her *prima facie* burden by arguing that she is similarly-situated with respect to her male co-workers in the IT group. However, Crosley, Leipold and Gaudio have more experience in the field of programming, are proficient in various computer programming languages, and possess greater responsibility within the IT group. Therefore, Vehar cannot establish a *prima facie* case because she is not "similarly-situated" with respect to her male co-workers in the IT group.

Even if the standard for sex-based wage discrimination used by the Birch court is applied, Vehar cannot proffer strong evidence that "the adverse action was motivated by discriminatory animus." Birch, 392 U.S. at 166. The Birch court pointed out that there may be situations in which a plaintiff cannot establish a *prima facie* case under the McDonnell Douglas analysis, yet may withstand summary judgment in light of circumstantial evidence of discriminatory animus. For example, the Birch court held that a plaintiff withstood summary judgment despite the fact that she could not identify a similarly-situated employee

---

[10] When assessing whether a plaintiff met her burden at the *prima facie* stage, a court must examine the plaintiff's evidence independent of the nondiscriminatory reasons produced by defendants as its justification for taking an adverse employment action. Cline v. Catholic Diocese of Toeldo, 206 F.3d 651 (6th Cir. 2000). Therefore, Cole's arguments about Crosley and Leipold's experience are not relevent to the determination of Vehar's *prima facie* case.

because the employer made numerous discriminatory comments, including telling the plaintiff, "I don't have to hire women." Birch, 392 U.S. at 156. Unlike the plaintiff in Birch, the e-mails from Snyder do not permit an inference that the setting of her salary was motivated by sex-based discriminatory animus.

Assuming *aguendo* that Vehar has met her *prima facie* burden of demonstrating sex-based wage discrimination, she has failed to demonstrate that Defendants' nondiscriminatory justifications for her rate of pay are a pretext for sex discrimination. If the defendant produces a legitimate nondiscriminatory reason for an adverse employment action, the plaintiff then must prove that the articulated reason is false or pretextual. St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 506-508. Defendants proffered several reasons for Vehar's lower salary compared to her male co-workers, including Vehar's relatively fewer years of experience as a computer programmer. Defendants submitted Cole's organizational charts, illustrating that Vehar was the newest member of the IT group, junior to both Crosley and Leipold. Not only did Vehar have less experience at Cole, Defendants also submitted evidence that she had the least amount of computer programming experience of any individual in the IT group. Vehar, however, has not submitted any evidence to counter Defendants' assertion that she was paid less that her male co-workers because she had less experience in the field of computer programming or to show that her salary was related to her gender. Accordingly, Vehar's wage-based sex discrimination claim fails as a matter of law.

### b.  <u>Reduction in Forces Claim</u>

Vehar also claims that Cole discriminated against her by failing to transfer her to the Luxottica headquarters in Cincinnati when the Twinsburg Cole facility closed.  Vehar's termination, along with 543 other Cole employees, constitutes a "reduction of work forces." A work force reduction situation occurs when, "business considerations cause an employer to eliminate one or more positions within the company.  An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." <u>Barnes v. Gencorp Inc.</u>, 896 F.2d 1457 (6th Cir.1990).  Vehar's position at Cole was eliminated when the Twinsburg facility closed.  It is undisputed that there was no position comparable to Vehar's position at the Luxottica headquarters.  Therefore, Vehar's termination was part of a reduction of work forces at Cole.

The <u>McDonnell Douglas</u> framework used to analyze discrimination claims changes in the context of a work force reduction.  <u>See</u> <u>Barnes</u>, 896 F.2d at 1465 n1.  In a reduction of work force circumstance, the fourth element of <u>McDonnell Douglas</u> is modified because the employer does not replace the employee with someone outside the protected class. <u>Godfredson v. Hess & Clark, Inc</u>., 173 F.3d 365, 371 (6th Cir. 1999).  Therefore, the plaintiff must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." <u>Id</u>.  This "extra" evidence must be "sufficiently probative" to permit the fact finder to

believe the defendant intentionally discriminated against the worker based on their protected status.  Barnes, 896 F.2d at 1466.

Here, Vehar offers no evidence that she was singled out by her employer when the Cole facility closed.  To the contrary, Vehar was terminated along with 543 other employees.  Indeed, Crosley, Gaudio, and Leiopld were not offered positions at the Luxottica headquarters.  Vehar does not offer any evidence that other similarly-situated male employees were offered positions at the Luxottica plant.[11]  Therefore, Vehar has not demonstrated that a genuine issue of material fact exists as to whether Defendants' non-discriminatory justifications for her termination at Cole are a pretext for sex discrimination.  Accordingly, Vehar's sex-based reduction in work force claim is dismissed.

### D.  Hostile Work Environment Claim

Vehar also alleges that Cole subjected her to a hostile work environment in violation of Title VII and R.C. 4112.02.  To prove a *prima facie* case of hostile work environment, a plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on gender;  (4) the harassment created a hostile work environment; and (5) the employer is liable.  Clark v. United Postal Service, Inc., 400 F.3d 341, 347 (6th Cir.2005).  A hostile work environment occurs "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's

---

[11] The only evidence Vehar puts forth is that Snyder recommended two male employees, Ramon Sanchez and Mike Hickey, for positions at Luxottica.  (Snyder Deposition at 35).

employment and create an abusive working environment." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993). The test for determining hostile work environment is both objective and subjective; thus, the conduct must be so severe or pervasive as to constitute a hostile working environment both to a reasonable person and the actual victim. <u>Id</u>. at 21-22.

When considering whether a work environment is "hostile," the court may consider, "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's performance." <u>Harris</u>, 510 U.S. at 23. For example, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998). Instead, the conduct must be "extreme" in order to constitute a hostile work environment. <u>Id.</u>

While the conduct complained of by Vehar may be considered belittling, it was not pervasive enough to constitute a hostile working environment. Vehar identified two e-mails forwarded by Snyder that contained jokes referring to women as "evil" and "witches." (Vehar Affidavit, Ex.s 13, 14). These e-mails were not directed at Vehar specifically, and were also forwarded to other employees at Cole. In addition, Snyder sent an e-mail to members of the IT group suggesting an outing at a bar called "Howl at the Moon." There is no evidence, and Vehar does not allege, that she ever complained to Snyder about these e-mails or asked him to stop before filing the instant action. The three e-mails cannot constitute "pervasive" harassment in the absence of other, ongoing misconduct about which

28

the company failed to act.  To the contrary, these are the sort of "isolated incidents" that "will not amount to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 788.  Although these comments are offensive and have no place in the workplace, they are not sufficiently pervasive to satisfy Faragher.  As a result, Vehar has failed to allege a *prima facie* hostile work environment case against Cole, and her Title VII and Ohio state law claims against Defendants fail.

### E.  Retaliation

Vehar asserts that Defendants retaliated against her by terminating her employment, failing to increase her salary, and denying her appropriate training.  The EPA and Ohio's corresponding civil rights statute, R.C Chapter 4112, make it unlawful to retaliate against a person because they have participated in a protected activity.[12]  To establish a *prima facie* case of retaliation under the EPA, a plaintiff must show: (1) that she engaged in protected activity; (2) that the defendants knew she exercised protected rights; (3) that as a result of her exercise of protected rights the defendants took employment action adverse to plaintiff; and (4) that there was a causal connection between the protected activity and adverse employment action.  EEOC v. Romeo Community Schools, 976 F.2d 985, 989 (6th Cir.

---

[12] The anti-retaliation provision of the EPA is codified at 29 U.S.C. 215(a)(3) and provides that it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding... or has testified or is about to testify in any such proceeding..."  Similar to the anti-retaliation provision of the EPA, R.C. 4112.02(I) provides that it is an unlawful discriminatory practice "for any person to discriminate against any other person because that person has made a charge, testified, or participated in any investigation, proceeding or hearing..."  As a result, Vehar's EPA retaliation claim and her retaliation claim under Ohio law will be addressed together.

1992); <u>Fenton v. HiSAN</u>, 174 F.3d 827, 831 (6th Cir. 1999) (citing <u>EEOC v. Avery Dennison Corp.</u>, 104 F.3d 858, 860 (6th Cir. 1997)).  Defendants do not dispute that Vehar's termination and alleged disparate pay are adverse employment actions.  However, Defendants argue that Vehar has not met the other three elements of her *prima facie* case.

Defendants assert that Vehar failed to state a claim for retaliation because an informal complaint to an employer does not rise to the level of a "protected activity" under the EPA statute.  However, the EPA applies to the unofficial assertion of rights through complaints at work.  <u>EEOC v. Romeo Community Schools</u>, 976 F.2d 985, 989 (6th Cir. 1992).  In <u>Romeo Community Schools</u>, plaintiff told defendant school district that she believed they were "breaking some sort of law" by paying her lower wages than her male co-workers.  The court held that this informal complaint triggered application of the EPA because it is the assertion of the statutory right that triggers the act, not the formal filing of a complaint.  <u>Id.</u> (citing <u>Love v. RE/MAX of America, Inc.</u>, 783 F.2d 393 (10th Cir. 1986)).

In the instant case, Vehar approached Snyder in October 2003 and requested a raise because she felt she was being underpaid in comparison to her male co-workers.  (Snyder Deposition at 30).  Vehar later wrote a letter to Hurd, Snyder, and Broerman alleging that members of the IT group retaliated against her after she voiced complaints about her salary in 2003.  These informal complaints rise to the level of a protected activity under the EPA because they are an assertion of a statutory right to equal pay under the EPA.  In addition, Snyder, Hurd, Broerman and Fleming all acknowledged receipt of Vehar's letter, indicating that Defendant knew Vehar was exercising a protected right.  (Vehar Affidavit, Appendix

30

D at 496); (Fleming Affidavit ¶10).  As a result, the first two requirements of Vehar's *prima facie* case are met.

Even if Vehar could establish a causal connection between her protected activities and adverse employment actions, her retaliation claim would still fail because she is unable to show that Cole's legitimate, non-discriminatory reason for terminating her employment was Vehar's employment was pretextual.  If a plaintiff establishes a *prima facie* case of retaliation, the defendant may rebut the presumption of retaliation by asserting a legitimate, non-discriminatory purpose for its actions.  Balmer, 423 F. 2d at 614.  The plaintiff must show by a preponderance of the evidence that the employment action is pretextual, by producing sufficient evidence from which the jury could "reasonably reject the defendants' explanation" and infer that the defendants' intentionally discriminated against her. Id.  The plaintiff must submit evidence demonstrating that the employer did not "honestly believe" in the proffered non-discriminatory reason for its adverse employment action." Braithwaite v. Timken Co., 258 F.3d 488, 494 (6th Cir.2001).  To inquire into the defendant's "honest belief," the court looks to whether the employer can establish "reasonable reliance" on the particularized facts that were before the employer when the decision was made.  Smith v. Chrysler, 155 F.3d 799, 806-07 (6th Cir.1998).

Vehar contends that after she told Snyder that she was being paid less than her male-co-workers in the IT group, she was denied training, forced to carry a pager on weekends, and eventually terminated from Cole.  To the contrary, the evidence shows that Vehar's salary was less than her co-workers because she had less experience in the field of

31

computer programming.   Furthermore, Vehar continued to receive raises after she complained to Snyder about her salary.  In addition, Cole provided evidence that Vehar was not given a position at Luxottica's Cincinnati headquarters because she was overqualified for the only similar position that was open.  The termination of Vehar's position occurred in conjunction with the closing of Cole's Twinsburg facility and termination of 542 other employees, including Vehar's co-workers.  Lastly, Cole contends that Vehar was denied computer training because management was not sure what their needs would be after closing the Cole facility.  Vehar has not presented any material evidence that Cole did not make a "reasonably informed and considered decisions" and did not "honestly believe" that Vehar was overqualified for the position at Luxottica headquarters.  As such, Vehar has not shown that ending her employment was pretextual, and Vehar's retaliation claims under Ohio law and the EPA fail.

## IV.  CONCLUSION

For the foregoing reasons Defendants' Motion for Summary Judgment (Dkt. #34) is **GRANTED**.  Therefore, Defendants are entitled to judgment on all four counts of the Complaint.  The remaining state law claims are **DISMISSED** without prejudice.

**IT IS SO ORDERED**.


**/s/ Peter C. Economus - October 5, 2006**

**PETER C. ECONOMUS**

**UNITED STATES DISTRICT JUDGE**

32